IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                                          :          CASE NO. 12-01777 (ESL)
                                                                :
JEANS.COM                                                       :          CHAPTER 11
                                                                :
            Debtor                                              :
_____                                :

OPINION AND ORDER

This case is before the court upon the *Motion for Order under Section 365(d)(3) Directing Debtor in Possession to Pay Nonresidential Lease Post-Petition Obligations and for Payment of Administrative Expenses* filed by DDR Norte LLC S.E., DDR Atlantico LLC S.E., DDR Palma Real LLC S.E., and DDR Rio Hondo LLC S.E. (collectively "DDR", the *"Motion for Payment and Administrative Expenses"*, Docket No. 172) and the *Opposition* thereto filed by the Debtor (Docket No. 196). Also before the court is a *Motion for Reconsideration of Orders and Request that the Motions to Assume Executory Contracts are Held in Abeyance until Further Disclosure by the Debtor* filed by the Unsecured Creditors Committee ("UCC") (Docket No. 236). For the reasons stated below, DDR's *Motion for Payment and Administrative Expenses* is denied in part and granted in part and the UCC's *Motion for Reconsideration* (Docket No. 236) is denied.

Procedural Background

The Debtor filed a voluntary Chapter 11 bankruptcy petition on March 9, 2012 (the "Petition", Docket No. 1) and has since then been managing its affairs and operating its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

On July 3, 5, and 9, 2012, the Debtor filed several *Motions Assuming Executory Contracts* (Docket Nos. 130, 133, 135, 137 and 147) in regards to the lease agreements of commercial properties located in #036 Yauco Plaza, San Lorenzo, Plaza Rio Hondo Shopping Center, Cidra Shopping Center and Plaza San Sebastian. The Debtor alleged that, in its best business judgment, assuming those lease agreements would result in the benefit of the bankruptcy estate. On July 31, 2012, the court entered an *Order* (Docket No. 160) scheduling a hearing for October 9, 2012 to consider, *inter alia*, the *Motions Assuming Executory Contracts* filed by the Debtor.

On August 27, 2012, DDR filed the *Motion for Payment and Administrative Expenses*

(Docket No. 172) seeking an order for the Debtor to pay the post-petition rents for the use and occupancy[1] of certain commercial spaces. DDR contends that part of the bankruptcy estate's assets at the time of the Petition were the unexpired leases of certain nonresidential real property between Debtor, as tenant, and DDR, as landlord, for commercial spaces at Plaza del Atlantico in Arecibo and Plaza Rio Hondo in Bayamon (the "Debtor Premises"). DDR avers that the Debtor currently uses those premises for its retail operations and maintains a "Jeans.com" store in each of them. DDR contends that post-petition charges under the leases, as of August 17, 2012, amount to $45,263.35 ($26,442.21 for Plaza del Atlantico and $18,821.14 for Plaza Rio Hondo). DDR also sustains that the Debtor has also been using and deriving benefit from DDR's Plaza del Norte property, located in Hatillo, P.R., as well as the Plaza Palma Real property in Humacao, P.R. DDR acknowledges that hese commercial spaces are currently leased to third-party, non-debtor entities, which are related and/or affiliated to the Debtor (the "Related Premises") but that the Debtor has been using them for the operation, storage, and/or maintenance of certain "Jeans.com" stores. The Debtor claims that post-petition charges as of August 17, 2012 for these Related Premises amount to $70,051.99 ($29,597.45 for Plaza Palma Real and $40,454.54 for Plaza del Norte). DDR seeks payment for post-petition rent for the Debtor's use of DDR's premises pursuant to Section 365(d)(3) of the Bankruptcy Code and claims administrative expense treatment of these post-petition rents under Section 503(b).

On September 14, 2012, the Debtor filed its *Opposition* to DDR's *Motion for Payment and Administrative Expenses* (Docket No. 196), acknowledging the imposition of post-petition rent and administrative expenses for DDR's premises at Plaza Rio Hondo, but arguing that DDR's premises at Plaza del Atlantico, Plaza Palma Real and Plaza del Norte are leased to a third-party, non-debtor corporation named Felix Fanti and Michael Silva Enterprises, Inc. ("FFMSE"). The Debtor

---

[1] "Use and occupancy" is a property right defined by state law. See *e.g.* Malden Mills Indus. v. Maroun (In re Malden Mills Indus.), 303 B.R. 688, 704 (1st Cir. BAP 2004). Article 1445(2) of Puerto Rico's Civil Code, 31 L.P.R.A. § 4052(2), establishes that the use of the leased thing, in the absence of an agreement, may be inferred from the nature of the thing according to the nature of the land. In addition, the landlord's obligation of providing the tenant the use and occupancy of the thing is fulfilled in a continuous manner serving as the cause of the tenant's obligation to make rental payments. See In re Quesada Vigo, 2009 Bankr. LEXIS 3847 at *21, 2009 WL 4040145 at *6 (Bankr. D.P.R. 2009), citing Campos del Toro v. Tribunal Superior, 75 P.R.R. 348, 75 D.P.R. 370, 375 (1953).

concludes that post-petition rents and administrative expenses may only be allowed to DDR Rio Hondo LLC S.E. in regards to the premise at Plaza Rio Hondo, but must be denied to DDR Norte LLC S.E., DDR Atlantico LLC S.E. and DDR Palma Real LLC S.E. in regards to the premises at Plaza del Atlantico, Plaza Palma Real and Plaza del Norte.

On September 18, 2012, the court entered an *Order* (Docket No. 199) scheduling a hearing for October 9, 2012 to consider DDR's *Motion for Payment and Administrative Expenses* (Docket No. 172) and the Debtor's *Opposition* thereto (Docket No. 196). On October 4, 2012, the court entered several *Orders Granting Unopposed Motions* (Docket No. 206, 209, 210, 212 and 214) in regards to the Debtor's *Motions Assuming Executory Contracts* (Docket Nos. 130, 133, 135, 137 and 147).

On October 4, 2012, the UCC filed a *Motion for Reconsideration of Orders and to Request that the Motions to Assume Executory Contracts are Held in Abeyance until Further Disclosure by the Debtor* (Docket No. 215) sustaining that FFMSE was the party that appeared in some of the assumed lease agreements, not the Debtor, and as such the information provided to assume the contracts needed to be clarified in order to determine if they were assumable or not, and that the same was true in other commercial properties. In addition, the UCC claims that no evidence of sub leases or assignment of the leases between FFMSE and the Debtor has been provided and that without that evidence, Section 365 of the Bankruptcy Code is inapplicable. The UCC also requested that the court set aside the *Orders* granting the assumption of executory contracts entered at Docket Nos. 206, 210, 212 and 214.

On October 4, 2012, DDR Rio Hondo LLC, S.E. filed a *Motion to Vacate or Alter Order Authorizing Assumption of Lease, Opposition to Dkt. 133 and Request to be Heard at Scheduled Hearing* (Docket No. 216) alleging that although it had entered into negotiations with the Debtor for the assumption of the lease agreement for the Plaza Rio Hondo premises, the Debtor owed over $35,000.00 in post-petition rent alone, and that under 11 U.S.C. § 365, the Debtor is required to pay all pre-petition and post-petition rents outstanding as a condition to assume the executory contract. DDR Rio Hondo LLC, S.E. requested that the *Order* granting assumption (Docket No. 209) be vacated, or altered to conform to whatever stipulation is filed at or before hearing on October 9,

2012, and that DDR be heard at hearing as scheduled.

On October 8, 2012, DDR filed a *Response to [the UCC]'s Position (Docket No. 215) and Tender of Evidence Showing Debtor's Use and Occupancy of Leased Spaces* (Docket No 229) alleging that since the Petition date, the Debtor has been utilizing and deriving a direct and immediate benefit from the use and occupancy of DDR's Plaza del Norte property, the Plaza Palma Real property, the premises located at Plaza Atlantico, a space subject to an expired leased but which Debtor continued to use thereafter, as well as the Plaza Rio Hondo property. DDR requested that it be permitted to be heard at the October 9, 2012 hearing without prejudice to any objections raised by the UCC or the Debtor, to which DDR reserved all rights to respond.

A hearing was held on October 9, 2012. The UCC withdrew its *Motion for Reconsideration* (Docket No. 215) in regards to the properties in the San Lorenzo premises (Docket Nos. 135 and 209) but preserved the objection to the assumption of leases in Yauco Plaza (Docket No. 130), Cidra Shopping Center (Docket No. 137) and Plaza San Sebastian Shopping Center (Docket No. 147). The court ordered the Debtor to oppose to the UCC's *Motion for Reconsideration* in regards to those particular leases. In addition, the court ordered DDR and the Debtor to file memoranda of law as to whether the lessor (DDR) is entitled to administrative expenses for the use and occupancy by the Debtor when the party to the lease is not the Debtor but a related corporation with common principals and shareholders. DDR Rio Hondo LLC, S.E.'s *Motion to Vacate or Alter Order...* (Docket No. 216) was denied for the reasons stated in open court.

On October 18, 2012, the Debtor filed an *Opposition to Motion for Reconsideration (Dkt. 215) and Motion in Compliance with Order* (Docket No. 234) informing that the leases for the premises in Yauco Plaza (Docket No. 130), Cidra Shopping Center (Docket No. 137) and Plaza San Sebastian Shopping Center (Docket No. 147) were all assigned to the Debtor and that therefore the UCC's *Motion for Reconsideration* should be denied. On October 22, 2012, the court entered an *Order* granting the Debtor's *Opposition* (Docket No. 235).

On October 24, 2012, the UCC filed a second *Motion for Reconsideration of Orders and to Request that the Motions to Assume Executory Contracts are Held in Abeyance until Further Disclosure by the Debtor* (Docket No. 236) in which it "reinstates its [prior] request for

reconsideration" and requests the court to set aside the *Order* entered at Docket No. 235 (granting the Debtor's *Opposition* to its initial *Motion for Reconsideration*).

On October 30, 2012, DDR filed a *Memorandum in Compliance with Order and in Support of Payment of Administrative Expenses for Use and Occupancy* (Docket No. 239) since the Petition date, the Debtor has been using and deriving benefit from its Premises at DDR's Plaza del Norte property, as well as the Plaza Palma Real property, that such Premises are currently leased to third-party, non-Debtor entities, which are related and affiliated to the Debtor, but not used, nor occupied, nor being paid by them. DRR sustains that the Debtor has been using the Premises for the operation, storage, and/or maintenance of certain of its "Jeans.com" stores. According to DDR, the post-petition charges under those leases have accrued and remain unpaid as of August 17, 2012, in the total amount of $70,051.99, detailed as follows: (a) Plaza Palma Real - $29,597.45; and (b) Plaza del Norte - $40,454.54. DDR also sustains that the Debtor continued to use and occupy the Premises at Plaza del Norte until September 29, 2012 for its own benefit, presumptively worth the lease charges of $7,883.43 for the month of September 2012, and the Premises at Plaza Palma Real for presumptively worth the lease charges of $9,370.00 for the months of September and October 2012, also for its own use and benefit. DDR contends that despite the Debtor's use of the Premises for the operation of its business endeavors, neither the Debtor nor its related corporations have made any payment to DDR for the post-petition rents accruing as to each of the properties and thus DDR claims it is prejudiced and deprived of its property by the Debtor's continued operation of its "Jeans.com" stores (forcing DDR to continue to provide space and services, and depriving DDR of the opportunity to re-let to a paying tenant) while denying the obligations to make post-petition rent payments, asserting that Debtor's related corporations' obligation to pay exonerates the Debtor. DDR claims an administrative claims for the post-petition rents of the Premises under 11 U.S.C. § 503(b)(1).

On October 30, 2012, the Debtor filed its *Memorandum in Opposition to Motion for Allowance of Administrative Payment* (Docket No. 241) arguing that it is not a party in the leases for DDR's Premises at Plaza del Norte or Palma Real, and thus the party that owes the rent payments to DDR is FFMSE, not the Debtor. The Debtor also argues that the case law cite by DDR in its

*Memorandum* is flawed because in those cases, the debtor either had a prior, although expired, contractual relationship with the landlord or there was no agreement whatsoever with any party but the debtor was using the premises.

On November 21, 2012, DDR filed a *Motion to Supplement and Amend [its] Memorandum in Compliance with Order and in Support of Payment of Administrative Expenses for Use and Occupancy* (Docket No. 245) alleging that upon further review and analysis of the post-petition rent amounts provided in the *Memorandum*, DDR realized that the accruals were inadvertently understated by $6,376.64 relative to the Plaza Palma Real property, and that the correct post-petition rent amounts due and owing for the Plaza Palma Real property are $29,597.45 from March 9, 2012 to August, 2012, plus $15,746.64 for the months of September and October 2012, for a total sum of $45,344.09, and $40,454.54 plus $7,883.43 for the month of September 2012, for a total sum of $48,337.97 for Plaza del Norte.

On October 5, 2012, DDR filed a *Motion to Inform Possession of Non-Conforming Payment Check and Request for Determination of Pending Contested Matters* (Docket No. 248) advising that although the contested matter argued in its previous motions is still pending, on November 19, 2012, the Debtor had tendered to DDR the check no. 1760 in the amount of $36,724.17, consisting of the alleged post-petition arrears due for the Plaza Palma Real Property, not the full amount owed of $45,344.09. Consequently, DDR informed that it forwarded check no. 1760 to the custody of its legal counsel for safe-keeping pending the court's resolution of the pending contested matters to preserve DDR's rights and allegations in the contested matters, as well as to prevent any mootness or issue preclusion with regards to the payment of the post-petition rents due to the Plaza Palma Real Property.

On December 21, 2012, DDR filed another *Motion to Inform Possession of Additional Non-Conforming Payment Checks and Request for Determination of Pending Contested Matters* (Docket No. 266) advising that shortly after the filing of the initial informative motion (Docket No. 248), the Debtor tendered to DDR additional checks nos. 1723 and 1853, each in the amount of $8,334.59, and that DDR forwarded them to the custody of its legal counsel for safe-keeping pending the resolution of the contested matters in order to preserve DDR's rights and allegations, as well as to

prevent any mootness or issue preclusion with regards to the payment of the post-petition rents due to the Plaza Palma Real Property.

Applicable Law & Analysis

*(A)     DDR's Motion for Administrative Expenses*

The paramount objective of a Chapter 11 reorganization is to rehabilitate and preserve the value of the financially distressed business. Mason v. Official Comm. of Unsecured Creditors (In re FBI Distrib. Corp.), 330 F.3d 36, 41 (1st Cir. 2003) citing NLBR v. Bildisco, 465 U.S. 513, 528 (1983), and Otte v. United States, 419 U.S. 43, 53 (1974). To further that objective, Section 503 of the Bankruptcy Code allows administrative expenses of the actual and necessary costs and expenses to preserve and/or benefit the bankruptcy estate. Although an "administrative expense" is not defined in the Bankruptcy Code, Section 503(b) contains a non-exhaustive list of the types of expenses that are considered administrative. In its pertinent part, Section 503 provides as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–

> (1)(A) the actual, necessary costs and expenses of preserving the estate including–

> (i) wages, salaries, and commissions for services rendered after the commencement of the case; ... 11 U.S.C. § 503.

A principal aim of Section 503 is to encourage parties to render post-petition services to debtors by ensuring that payment will be made on a priority basis in the post-petition period. See In re FBI Distrib. Corp., 330 F.3d at 41, citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 186, 186-87 (1977); Doctor's Hospital v. Vilar (In re Doctor's Hospital), 1995 U.S. App. LEXIS 1576 at *3, 1995 WL 30903 at *1 (*Per Curiam*, 1st Cir. 1995), citing In re Mammoth Mart, Inc., 536 F.2d 950 (1st Cir. 1976); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.06[2] (16th ed. 2013) at pp. 503-526 ("allowing administrative expense priority under Section 503(b)(1) is important to provide an incentive for creditors to continue doing business with a debtor and an incentive for others to engage in business transactions with the debtor.") "There are several essential policies underlying the priority for administrative expenses: to encourage activities that will benefit

7

the estate; to advance reorganization efforts which would be hampered by the necessity of advance payments for supplies of the estate; to compensate those injured by the estate; and to prevent unjust enrichment of the estate at the expense of its creditors." Nancy C. Dreher, Joan N. Feeny and Michael J. Stepan, Bankruptcy Law Manual, Volume 1, § 6.32 (5th ed. 2012-2), p. 1124.

Section 503 derives its importance from Section 507, which sets forth the categories of expenses and claims that are entitled to priority treatment in the distribution of a debtor's estate. Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 503.01 (16th ed. 2013) at p. 503-508; 11 U.S.C. § 507. Administrative expenses are entitled to priority in payment pursuant to Section 507(a)(2). "[B]ankruptcy courts have broad discretion in determining whether to award administrative expense priority. That discretion is limited by the clear intent of section 503(b)(1)(A): the actual and necessary costs of preserving the estate." In re Woodstock Assocs. I, Inc., 120 B.R. 436, 451 (Bankr. N.D. Ill. 1990).

In Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d at 954, the Court of Appeals for the First Circuit (the "First Circuit") established a two-prong test to determine whether or not a claim qualifies as an administrative expense. The first prong asks whether the "transaction" arose between the creditor and the bankruptcy estate post-petition; the second prong inquires as to whether the incurred expense benefitted the estate in some demonstrable way. Id. at 954. This two-prong test was subsequently upheld by the First Circuit in In re FBI Distrib. Corp. as follows: "[i]n general, for a claim to qualify as an administrative expense under subsection 503(b)(1): (1) it must have arisen from a transaction with the trustee or debtor in possession, rather than from a pre-petition transaction with the debtor, and (2) the consideration supporting the claim must have benefitted the estate in some demonstrable way". 330 F.3d at 36. The fact that the debtor has deprived the non-debtor of its property does not automatically trigger an administrative claim. The pertinent inquiry is the actual benefit to the estate, not the loss sustained by the creditor. See In re Enron Corp., 279 B.R. 79, 85 (Bankr. S.D.N.Y. 2002). "The burden of proving entitlement to priority payment as an administrative expense ... rests with the party requesting it." In re Hemingway Transport, Inc., 954 F.2d 1, 5 (1st Cir.1992).

In the instant case, there is no dispute that the Debtor used and occupied post-petition DDR's

8

premises at Plaza Palma Real and Plaza del Norte. This fact satisfies the first prong of the Mammoth and FBI Distrib. Corp. test (whether the "transaction" arose between the creditor and the estate, as opposed to a pre-petition transaction with the debtor). It is also uncontested that the use and occupancy of DDR's Premises by the Debtor resulted in benefit for the bankruptcy estate for the Debtor sells its merchandise in those Premises from which it derives revenues. Therefore, the second prong of Mammoth and FBI Distrib. Corp. test is also satisfied.

The Debtor's only argument is that it is not a party to the pre-petition lease contracts with DDR and that in the cases cited by DDR ---In re Gray, 2005 Bankr. LEXIS 374 (Bankr. D. Kan. 2005), and Geltzer v. Helen-May Holdings LLC (In re Kollel Mateh Efraim), 2009 Bankr. LEXIS 2236 (Bankr. S.D.N.Y. 2009)--- the debtor either had a prior but expired contractual relationship or there was no agreement whatsoever with the debtor albeit the debtor was using the premises. A careful analysis of the pleadings shows that DDR cited those two cases for the proposition that the post-petition "transaction" required in Mammoth and FBI Distrib. Corp. does not require a pre-existing written contract. See DDR's *Memorandum*, Docket No. 239. The court agrees with DDR's analysis as long as the conditions established in Mammoth and FBI Distrib. Corp. are satisfied. In the instant case, both conditions are met, and therefore, DDR is entitled to administrative expenses for the post-petition arrears for the Premises used and occupied by the Debtor.

Notwithstanding, once the claimant establishes that the estate actually benefitted from the use of its property, the court must quantify the administrative expense. In re JAS Enterprises, 180 B.R. 210, 217 (Bankr. D. Neb. 1995); In re Carmichael, 109 B.R. 849, 851 (Bankr. N.D. Ill. 1990). For instance, if the estate only used a portion of the property, the estate must pay an administrative expense only for the portion it used. In re Dant & Russell, Inc., 853 F.2d 700, 707 (9th Cir. 1988); In re Thompson, 788 F.2d 560, 562 (9th Cir. 1986); In re Patient Educ. Media, Inc., 221 B.R. 97, 102 (Bankr. S.D.N.Y. 1998). The contract rate is typically presumed to set the reasonable value, but either party may offer evidence to prove a different reasonable value. Dant & Russell, Inc., 853 F.2d at 707; In re Thompson, 788 F.2d at 563. "In the absence of a lease or rental agreement, there is no presumptively reasonable rental rate." In re Kollel Mateh Efraim, LLC, 2010 Bankr. LEXIS 3197 at *21, 2010 WL 3782050 at *7 (Bankr. S.D.N.Y. 2010), citing In re Aerospace Techs., Inc., 199

9

B.R. 331, 340 (Bankr M.D.N.C. 1996) ("[w]hile the court has discretion to fix the reasonable administrative rent, the contract rent is presumptively the reasonable value for such use and occupancy.") Because in the instant case there is no written lease agreement between DDR and the Debtor for certain Premises, there is no presumptively reasonable rental rate established. See In re Kollel Mateh Efraim, LLC, 2010 Bankr. LEXIS 3197 at *21, 2010 WL 3782050 at *7. DDR has not alleged, much less demonstrated, how the rates it intends to charge the Debtor for the Premises at Palma Real and Plaza del Norte are reasonable, even though it carries the burden of proof of establishing it. In re Hemingway Transport, Inc., 954 F.2d at 5. Instead, DDR parts from the premise that the lease rate in the contract with FFMSE is automatically reasonable. That may be so, but it must be established through evidence. Absent of evidentiary support, the court cannot declare that the amounts claimed by DDR are reasonable because there is a lease contract with another entity. Thus, an evidentiary hearing to that effect will be scheduled.

*(B)      The UCC's second Motion for Reconsideration*

The UCC filed its first *Motion for Reconsideration* on October 4, 2013 (Docket No. 215) contending that while discussing draft of the disclosure statement, it brought to the attention of the Debtor that several lease agreements it intended to assume were not with the Debtor, but with an affiliated corporation, namely FFMSE, and consequently requested that the orders granting the Debtor's motions to assume the leases for the properties at Yauco Plaza (Docket No. 130), Cidra (Docket No. 137) and Yabucoa (Docket No. 147)[2] used by the Debtor should be set aside. The UCC's *Motion for Reconsideration* was considered at the October 9, 2013 hearing, when the court ordered the Debtor to oppose to the *Motion for Reconsideration* (Docket Nos. 230 and 231). The Debtor did so on October 18, 2013 (Docket No. 234) alleging that for those specific premises, the lease agreements had been assigned to the Debtor. The court granted the Debtor's *Opposition* on October 22, 2013 (Docket No. 235), which effectively denied the UCC's *Motion for Reconsideration*. It is from that denial that the UCC filed its second *Motion to Reconsider*

---

[2] Although initially UCC had also questioned the leases for the premises in San Lorenzo (Docket No . 135), it subsequently withdrew that objection at the October 9, 2013 hearing (Docket Nos. 230 and 231).

reinstating its prior request for reconsideration (Docket No. 236).

Contested matters in bankruptcy proceedings are governed by Fed. R. Bankr. P. 9014. Subsection (c) of that rule expressly makes Fed. R. Bankr. P. 7054 (judgments) applicable to contested matters like the instant one.

Motions to reconsider are not recognized by the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure in *haec verba*. See Jimenez v. Rodriguez (In re Rodriguez), 233 B.R. 212, 218-219 (Bankr. D.P.R. 1999), conf'd 17 Fed. Appx. 5 (1st Cir. 2001); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991); Lavespere v. Niagara Mach. & Tool Works Inc., 910 F.2d 167, 173 (5th Cir. 1990), cert. denied 510 U.S. 859, abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994); Perez Mujica v. FirstBank P.R. (In re Perez Mujica), 470 B.R. 251, 253 (Bankr. D.P.R. 2012). Rather, federal courts have considered motions so denominated as either a motion to "alter or amend" under Fed. R. Civ. P. 59(e) or a motion for relief from judgment or order under Fed. R. Civ. P. 60(b). See Fisher v. Kadant, Inc., 589 F.3d 505, 512 (1st Cir. 2009) (noting a motion for reconsideration implicated either Fed. R. Civ. Pro. 59(e) or 60(b)); Equity Security Holders' Committee v. Wedgestone Financial (In re Wedgestone Financial), 152 B.R. 786, 788 (D. Mass. 1993). "These two rules are distinct; they serve different purposes and produce different consequences. Which rule applies depends essentially on the time a motion is served. If a motion is served within [fourteen][3] days of the rendition of judgment, the motion ordinarily will fall under Rule 59(e). If the motion is served after that time, it falls under Rule 60(b)." Van Skiver, 952 F.2d at 1243. "The substance of the motion, not the nomenclature used or labels placed on motions, is controlling." See In re Lozada Rivera, 470 B.R. 109, 112-113 (Bankr. D.P.R. 2012).

Because the UCC filed its second *Motion for Reconsideration* (Docket No. 236) within the 14-days afforded in Fed. R. Bankr. P. 9023, it will be considered under the scope of Fed. R. Civ. P. 59(e), made applicable in bankruptcy cases through Fed. R. Bankr. P. 9023. See Van Skiver, 952 F.2d at 1243; In re Lozada Rivera, 470 B.R. at 113. Where a final judgment has been entered, and

---

[3] See the most recently amended version of Fed. R. Bankr. P. 9023.

a timely filed Fed. R. Civ. P. 59 motion resulted in the entry of a second judgment that changed the legal rights of the parties, and the parties filed a successive Rule 59 motion, "[t]he timeliness of the successive motion comes from the alteration of the judgment. A significant change in a judgment starts all time periods anew, whether the district court alters the judgment at the request of a party or on its own motion." Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986) (citing FTC v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211 (1952)). Accordingly, in Kraft, Inc. v. United States, 85 F.3d 602, 605 (Fed. Cir. 1996), the Court of Appeals for the Federal Circuit noted that "a motion to reconsider a revised judgment tolls the time for appeal only in instances where the second judgment presents a new significant adverse ruling against the movant which the movant has had no previous opportunity to challenge". Courts discourage the filing of successive Fed. R. Civ. P. 59(e) motions as "wasteful of judicial resources." Arnold v. Farmers Ins. Co., 2012 U.S. Dist. LEXIS 67262 at *19, 2012 WL 1684537 at *7 (D.N.M. 2012). The United States Court of Appeals for the Federal Circuit has explained that "[s]uccessive motions periods, which would encourage piecemeal attack on a judgment and delay appeals, are not authorized. Once a district court has denied timely filed tolling motions, the litigants must appeal if they wish to further challenge a judgment, except for the special circumstances recognized in [Fed. R. Civ. P.] 60(b)." Kraft, Inc. v. United States, 85 F.3d 602, 605 (Fed. Cir. 1996) (citation omitted). Also see Venable v. Haislip, 721 F.2d 297, 299 (10th Cir. 1983) (noting that "a motion to reconsider an order disposing of a motion that tolled the running of the time for appeal typically does not again toll the running of the appeal period"). The Court of Appeals for the Fifth Circuit has also ruled that "[t]he interest in finality requires that parties generally get only one bite at the [Fed. R. Civ. P.] 59(e) apple for the purpose of tolling the time for bringing an appeal" and that, even when a federal trial court grants an initial "motion for reconsideration [brought under Fed. R. Civ. P. 59] but, in the same order, had made it clear that the effect of the judgment was unchanged," a second motion for reconsideration is "condemned by well-established authority in this and other circuits." Charles L.M. v. Northeast Independent School Dist., 884 F.2d 869, 870-871 (5th Cir. 1989). Also see Ysais v. Richardson, 603 F.3d 1175, 1178 (10th Cir. 2010) (holding in case where plaintiff filed a motion seeking reconsideration of an "order denying his motion for reconsideration of the amended final judgment

... [that] this second motion for reconsideration ... did not extend the time for filing a notice of appeal from the underlying amended final judgment").

In short, a second motion for reconsideration under Fed. R. Civ. P. 59(e) is viable only when the judgment from which reconsideration was initially sought was significantly altered. A party cannot repeatedly renew a reconsideration on the same grounds that were denied. In the instant case, the *Order* denying the UCC's initial *Motion for Reconsideration* (Docket No. 235) did not significantly amend or alter the initial *Orders* from which reconsideration was sought (Docket Nos. 206, 212 and 214). The UCC did not allege or demonstrate any of the circumstances set in Fed. R. Civ. P. 60. Thus, the second *Motion for Reconsideration* (Docket No. 236) cannot be entertained and is therefore hereby denied.

Conclusion

For the reasons stated herein, the court grants in part and denies in part DDR's *Motion for Payment and Administrative Expenses* (Docket No. 172) and schedules a hearing to determine the reasonableness and amounts of the expenses claimed by DDR for June 19, 2013 at 2:00 p.m. The parties shall file proposed findings of fact and conclusions of law 10 days prior to the hearing. The UCC's second *Motion for Reconsideration* (Docket No. 236) is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 12th day of April, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge